IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-347-RJC-DCK

| | |
|---|---|
| INTEGRIS COMPOSITES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| BARRDAY CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. Proc. 9(B), 12(B)(6) and 12(E)" (Document No. 15). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied without prejudice</u> in part.

### I. BACKGROUND

**A. Factual**

Plaintiff Integris Composites, Inc., formerly known as TenCate Advanced Armor USA, Inc. ("Plaintiff" or "TenCate" or "Integris"), is a California corporation with its principal place of business in Ohio. (Document No. 1, p. 2). Plaintiff is "in the business of manufacturing composite armor solutions." <u>Id.</u> "TenCate entered into contracts with General Dynamics Land Systems ("GDLS") wherein TenCate agreed to create armored components for vehicles (the "GDLS Contracts")." (Document No. 1, p. 3).

> TenCate turned to Barrday, an established supplier with whom there
> was already a relationship, and entered into an arrangement with

> Barrday whereby Barrday would, on behalf of TenCate, procure ShieldStrand S-Glass fiber (the "S-Glass fiber") and store it until TenCate issued purchase orders for Barrday to toll convert the S-Glass fiber into a woven and prepreg product required by the GDLS Contracts (the "product").

(Document No. 1, pp. 3-4).

Barrday Corp. ("Defendant" or "Barrday") is a Delaware corporation with a principal place of business in Ontario, Canada. (Document No. 1, p. 2). Defendant is a fabric manufacturer, including of spall liner, "a type of multi-layered fabric designed to absorb shrapnel and other small, ballistic material." (Document No. 1, pp. 2-3).

Based on a purported limited supply of S-Glass fiber, "Barrday recommended to TenCate that it pre-purchase sufficient quantities of S-Glass fiber to ensure adequate supply to meet TenCate's commitment under the GDLS Contracts." (Document No. 1, p. 4). Defendant calculated how much S-Glass fiber it would need to fulfill the requirements under the GLDS Contracts, "accounting for conversion rates, waste, and selvage during the toll converting process," and communicated these amounts to Plaintiff. Id.

"Tony Fiorenzini, President of Barrday, confirmed in a letter to TenCate that 'Tencate would purchase a specified amount of fiber and Barrday would, on a best effort basis, toll convert that fiber into fabric at our Charlotte, NC facility and then coat the fabric at our Millbury, MA facility.'" (Document No. 1, p. 5). Based on Defendant's calculations, Plaintiff "made seven payments to Barrday for the pre-purchase of S-Glass fiber for a total amount of $4,948,070." Id. Plaintiff then, "as and when required by GDLS," issued Purchase Orders to Defendant for specified quantities of woven fabric to be delivered by a certain date. (Document No. 1, p. 6).

Plaintiff "issued another purchase order dated August 20, 2019 to fulfill its ongoing obligations under the GDLS Contracts," but was informed by Defendant that all the S-Class fiber

had been consumed. (Document No. 1, p. 7). However, "TenCate had not yet fulfilled all of its obligations under the GDLS Contracts." Id. Plaintiff alleges that Defendant used some of the S-Glass fiber on another project unrelated to Plaintiff. Id.

Allegedly, Defendant informed Plaintiff for the first time in February 2022, that it "did not, as it had previously represented to TenCate, toll convert the S-Glass fiber itself at its Charlotte, NC facility" but instead "had subcontracted the toll converting of the S-Glass fiber to a third party." (Document No. 1, p. 8). Plaintiff contends that Defendant's misrepresentations have damaged Plaintiff "in an amount no less than $1,278,000." (Document No. 1, p. 9).

**B. Procedural**

Plaintiff initiated this action with the filing of a "Complaint" (Document No. 1) on July 30, 2022. The Complaint asserts claims against Defendant Barrday for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraudulent inducement; (4) negligent misrepresentations; (5) implied contract; (6) unjust enrichment (excessive waste); (7) conversion (excessive waste); (8) conversion (use of Plaintiff's S-Glass fiber on Non-TenCate Projects); (9) unjust enrichment (use of Plaintiff's S-Glass fiber on Non-TenCate Projects); (10) bailment; (11) violations of North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; and (12) punitive damages. (Document No. 1, pp. 11-20).

"Defendant's Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. Proc. 9(B), 12(B)(6) and 12(E)" (Document No. 15) was filed on October 3, 2022. Defendant seeks dismissal of most of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6), but also seeks dismissal of the fraudulent inducement claim pursuant to Fed.R.Civ.P. 9(b) and suggests, in the alternative, that Plaintiff be directed to make a more definite statement of its grounds for the breach of contract claim pursuant to Fed.R.Civ.P. 12(e). (Document Nos. 15 and 16). Defendant does *not* seek

dismissal of claim nine for unjust enrichment (use of Plaintiff's S-Glass fiber on Non-TenCate Projects). Id.

Plaintiff's "Response" (Document No. 22) was filed on October 24, 2022; and "Defendant's Reply Brief…" (Document No. 25) was filed on November 8, 2022.

"Plaintiff's Motion To Amend Case Caption" (Document No. 26) was filed on November 20, 2023, and reports that Plaintiff changed its name through a Certificate of Amendment filed with the California Secretary of State's Office, to Integris Composites, Inc., effective September 1, 2023. The Court granted "Plaintiff's Motion To Amend Case Caption" on November 21, 2023. (Document No. 27)

The pending motion to dismiss has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

Pursuant to Fed.R.Civ.P. 12(e) "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

> [t]he class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small. As the cases make clear, the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

Turner v. Shaw Constructors, Inc., No. 1:11-CV-097-MR-DLH, 2011 WL 3156332, at *1 (W.D.N.C. July 26, 2011) (quoting 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 1376 (3d ed.2004));  see also Evans v. Sam's East, 3:16-CV-671-FDW-DCK, 2016 WL 11646027 (W.D.N.C. Oct. 13, 2016).

### III.  DISCUSSION

As noted above, Plaintiff brings twelve (12) claims against Defendant, all related to an alleged breach of contract regarding Defendant's production of a fabric product that was necessary for Plaintiff to satisfy its obligations under the GDLS Contracts.  Defendant's arguments for dismissal, or in the alternative, for a more definite statement, are compelling.  Although the delay in issuing this Memorandum And Recommendation is regrettable, the undersigned respectfully observes that Plaintiff failed to avail itself of the opportunity to promptly file an Amended Complaint that might have provided more support for the alleged breach as well as the other related claims.

**Breach of Contract**

In support of dismissal, Defendant first notes that a "valid contract requires offer, acceptance, consideration, and mutuality of assent of terms that are sufficiently definite to enable a court to enforce them." (Document No. 16, p. 2) (citing MedShift, LLC v. Charles W. Morgan Pelle, LLC, No. 3:20-CV-034-RJC-DSC, 2022 WL 392507, at *5 (W.D.N.C. Feb. 8, 2022)). Defendant then argues that the breach of contract claim "should be dismissed because the Complaint does not 'adequately allege a meeting of the minds as to all essential terms of an agreement.'" Pres. Pro. Servs., LLC v. M2 Pictures, LLC, No. 3:14-CV-589-RJC-DCK, 2015 WL 3659506, at *5 (W.D.N.C. May 5, 2015), adopted by 2015 WL 3657463 (W.D.N.C. June 12, 2015)).

6

Defendant further asserts that:

> The Complaint does not allege any single written agreement governing the parties' relationship and does not set forth the requisite terms of whatever agreement (or agreements) allegedly existed. The closest the Complaint comes to alleging terms of a contract is alleging that "Barrday agreed to fulfill all purchase orders from TenCate that were necessary and satisfy TenCate's obligations under the GDLS Contracts at Barrday's Charlotte, NC and Millbury, Massachusetts facilities based on the amount of pre-purchased S-Glass fiber." *Id.*, ¶ 73. This alleged agreement is beyond vague as to specific material terms agreed upon by the parties. As in *Pres. Pro. Servs*,
>
>> [T]he Complaint lacks any explanation of when or where any contract was formed, or the terms of such contract(s)... Moreover, the allegations do not state whether the purported contracts were oral or written, how many there were, or who negotiated them . . . The Complaint does not include copies of any purported contracts, invoices, emails, letters, or other documents; nor does it address the apparent absence of such documentation. *Id.* at *3.

(Document No. 16, p. 3).

Defendant also notes that the Complaint does not allege: how many purchase orders were placed, or when, or by whom; when performance was due; whether the purchase order(s) included the contract terms; what consideration was provided Defendant for its alleged obligations; the price of the finished products; how the price was calculated; which, if any, purchase order(s) Defendant failed to fulfill; or any specifics of the GDLS contracts. (Document No. 16, pp. 3-4).

Defendant concludes that Plaintiff's allegations, provide little, if any, information about the alleged terms of the parties' agreement, and therefore, are insufficient to support the claim and should be dismissed. In the alternative, Defendant suggests that Plaintiff be directed to provide a more definite statement because "the Complaint [is] so devoid of clarity as to the factual bases for

7

Case 3:22-cv-00347-RJC-DCK   Document 28   Filed 12/05/23   Page 7 of 12

its claims that Barrday cannot adequately respond." (Document No. 16, p. 9). Defendant argues that a more definite statement should at least include:

- Were there one or more written documents and/or oral statements that formed the alleged agreement upon which the breach occurred?

- When were each of these documents or oral agreements entered into? (The Complaint suggests an agreement prior to the Aug. 20, 2019 purchase order.)

- If written, identify the document or documents, and if oral, state who made and accepted each oral statement or agreement for each side and provide the material terms.

- What were the terms of the agreement or agreements referenced above? And what was the nature and date of each breach alleged to have occurred?

Id.

In response, Plaintiff contends it has adequately alleged the existence of a valid, enforceable contract and a breach of that contract. (Document No. 22, pp. 6-7). In addition, Plaintiff repeatedly argues that Defendant's request for a more definite statement including the form, material terms, and date(s) of the purported contract is a "premature discovery request." (Document No. 22, pp. 1, 6, 7, 8, 11, 12).

In reply, Defendant argues that Plaintiff has failed to allege the basic elements of the alleged contract, and that Plaintiff's response "does little to clarify the vague allegations of its Complaint." (Document No. 25, p. 1). Defendant then notes that the response does not even attempt to distinguish Pres. Pro. Servs., LLC v. M2 Pictures, LLC, a decision by this Court that "dismissed a breach of contract claim for failure to include specific allegations regarding the purported contract's negotiation, formation, terms, or any writing that might patch these factual holes." (Document No. 25, pp. 1-2).

Defendant notes that Plaintiff alleges that it "paid Barrday's actual cost to purchase S-Glass fiber, allegedly done on TenCate's behalf, and to store and transport that fiber," but does *not* allege "a promise, supported by consideration, to provide a specified quantity of finished fabric." (Document No. 25, p. 3). "At most, TenCate vaguely alleges that there were intermittent purchase orders issued to Barrday, but TenCate does not allege a breach of any accepted purchase order, nor does it allege any consideration whatsoever that would elevate Barrday's fiber calculations from estimates to guaranteed contractual obligations." (Document No. 25, p. 4).

Defendant further notes that "the *only* specific written statement alleged by TenCate is that Barrday's president wrote in a letter that 'Tencate would purchase **a specified amount of fiber** and Barrday would, **on a best effort basis**, toll convert that fiber into fabric at our Charlotte, NC facility and then coat the fabric at our Millbury, MA facility.'" (Document No. 25, p. 5) (quoting Document No. 1, ¶24). However, Defendant argues that Plaintiff "has cited no case where 'best efforts' equates to an unqualified guarantee as to unalleged essential elements of time and cost/price." Id.

The undersigned finds Defendant's arguments most persuasive. However, it is a close call as to whether the Court should grant dismissal or allow for amendment pursuant to Rule 12(e).

After careful consideration of the Complaint and the briefing on the motion to dismiss, the undersigned finds that this is a case where "the pleading is sufficiently intelligible for the district court to make out one or more potentially viable legal theories on which the claimant might proceed" but sufficiently "vague or ambiguous" to preclude an adequate response from Defendant. Turner, 2011 WL 3156332, at *1 (quoting 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 1376 (3d ed.2004)).

The undersigned respectfully disagrees that Defendant is making premature discovery requests by seeking clarification on the existence and/or terms of the parties' purported contract. Plaintiff's response acknowledges that "a valid contract exists where there is an offer, acceptance of that offer, consideration, and mutuality of assent to terms," and "that an enforceable contract may be oral, written, or manifested by conduct." (Document No. 22, p. 6) (citations omitted). However, Plaintiff's pleading and response provide little information about the foregoing elements of a breach of contract. To date, Plaintiff has not even indicated if the purported contract was oral or written.

Based on the foregoing, the undersigned will recommend that Defendant's alternative request for a more definite statement be granted, and that Plaintiff be directed to promptly file an Amended Complaint. Because all of Plaintiff's claims are related to the same underlying facts, the undersigned finds that it would be prudent to delay a more thorough analysis of Plaintiff's additional claims until after it has filed an Amended Complaint. Defendant presents several persuasive arguments for dismissal; however, if an Amended Complaint includes additional factual support for a breach of contract claim (and/or other claims), it may impact the Court's analysis of the other claims. Simply put, judicial economy and a decision of the merits of this case favor foregoing analysis of all the claims until an Amended Complaint is filed.

The undersigned notes that Plaintiff does not oppose dismissal of its punitive damages claim, but contends it has adequately and properly requested punitive damages in its prayer for relief. (Document No. 22, p. 30)(citing Document No. 1, p. 20). Also, as noted above, Defendant does *not* seek dismissal of claim nine for unjust enrichment (use of Plaintiff's S-Glass fiber on Non-TenCate Projects). See (Document Nos. 15 and 16).

10

Case 3:22-cv-00347-RJC-DCK   Document 28   Filed 12/05/23   Page 10 of 12

Based on the foregoing, the undersigned respectfully recommends that Plaintiff be directed to promptly file an Amended Complaint that takes into consideration the concerns identified herein about the existing Complaint, as well as additional arguments made by Defendant. In addition, the undersigned suggests that an Amended Complaint should more fully address the jurisdiction of this Court over this matter. Although Defendant does not challenge jurisdiction, the undersigned notes that the Complaint alleges little, if any, connection to support personal jurisdiction over Defendant.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. Proc. 9(B), 12(B)(6) and 12(E)" (Document No. 15) be **GRANTED in part** – to the extent Plaintiff be directed to file an Amended Complaint that includes a more definite statement in support of its breach of contract (and other) claims; and that it be **DENIED WITHOUT PREJUDICE in part** – to the extent Defendant may wish to re-assert its arguments for dismissal at a later date, if necessary.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude

the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: December 5, 2023

David C. Keesler
United States Magistrate Judge